UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD E. RABURN, | ) | CASE NO. 4:15CV2412 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | GEORGE J. LIMBERT |
| | ) | |
| CAROLYN W. COLVIN[1], | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | MEMORANDUM OPINION |
| SECURITY ADMINISTRATION, | ) | AND ORDER |
| | ) | |
| Defendant. | ) | |

Plaintiff Richard E. Raburn ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. In his brief on the merits, filed on March 10, 2016, Plaintiff claims that the administrative law judge ("ALJ") erred because: (1) the residual functional capacity ("RFC") finding was not supported by substantial evidence; and (2) the decision violated the treating physician rule. ECF Dkt. #14 at 18-24. On May 25, 2016, Defendant filed a response brief. ECF Dkt. #17. Plaintiff filed a reply brief on June 8, 2016. ECF Dkt. #18.

For the following reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on August 13, 2012, and August 30, 2012, respectively. ECF Dkt. #11 ("Tr.") at 18.[2]  In both applications, Plaintiff alleged disability

---

[1]On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than the page numbers assigned when the Transcript was compiled. This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

beginning July 20, 2012. *Id.* These claims were denied initially and upon reconsideration. *Id.* Plaintiff then requested a hearing before an ALJ, and a video hearing was held on July 31, 2014. *Id.*

On August 25, 2014, the ALJ denied Plaintiff's applications for DIB and SSI. Tr. at 18. The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012. *Id.* at 20. Continuing, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 20, 2012, the alleged onset date. *Id.* The ALJ determined that Plaintiff had the severe impairments of coronary artery disease and cardiomyopathy. *Id.* Following his analysis of Plaintiff's severe impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 21. After considering the record, the ALJ found that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that Plaintiff could: lift or carry ten pounds occasionally and less than ten pounds frequently; stand or walk about two hours in an eight-hour workday, with normal breaks; sit for six hours in an eight-hour workday, with normal breaks; never climb ladders, ropes, or scaffolds; never crawl; occasionally use ramps and stairs, balance, stoop, kneel, crouch, or crawl; and perform work involving simple instructions and directions, and not requiring adherence to strict or fast paced production demands. *Id.* at 22. Further, the ALJ found that Plaintiff must avoid more than occasional exposure to extreme heat or cold, humidity, and irritants such as fumes, dust, gases, and smoke. *Id.*

Next, the ALJ determined that Plaintiff was unable to perform past relevant work. Tr. at 26. The ALJ stated that Plaintiff was a younger individual on the alleged disability onset date, had a high school education and was able to communicate in English, and that the transferability of job skills was not material to the determination of disability because the Medical-Vocational Rules supported a finding that Plaintiff was not disabled. *Id.* at 27. Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* In conclusion, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from July 20, 2012,

through the date of the decision.  *Id.* at 28.  At issue is the decision of the ALJ dated August 25, 2014, which stands as the final decision.  *Id.*

On November 24, 2015, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1.  Plaintiff filed a brief on the merits on March 10, 2016, posing the following assertions to the Court for consideration:

> 1. The ALJ's RFC finding lacks the support of substantial evidence because it did not properly account for all of [Plaintiff's] limitations.
>
> 2. The ALJ did not comply with the treating physician rule when evaluating the opinion of cardiologist Rekhi Varghese, M.D.

ECF Dkt. #14 at 18-24.  Defendant filed a response brief on May 25, 2016.  ECF Dkt. #17.  On June 8, 2016, Plaintiff filed a reply brief.  ECF Dkt. #18.

**II.**   **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

After finding that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012, and that he had not engaged in substantial gainful activity since July 20, 2012, the alleged onset date, the ALJ determined that Plaintiff's severe impairments had more than a minimal impact on Plaintiff's ability to perform work on a regular and continuing basis at competitive levels of employment.  Tr. at 20.  In addition to the impairments the ALJ found to be severe, the ALJ explained that Plaintiff also had a history of sinus issues beginning in December 2013, but that the sinus issues did not meet the durational requirements set forth by the Social Security Administration and did not appear to have an ongoing impact on Plaintiff's ability to perform work-related activities, particularly as his symptoms improved dramatically with treatment. *Id.* at 21.  For these reasons, the ALJ determined that Plaintiff's sinus issues were non-severe.  *Id.* Continuing, the ALJ indicated that Plaintiff alleged a history of depression and anxiety at the hearing, but, despite the allegation, had made only minimal mention of mental symptoms throughout his treatment and had not sought any mental health treatment for the alleged problems outside of seeking some medication through his primary care doctor.  *Id.*  Accordingly, the ALJ determined that Plaintiff's mental impairment did not have more than a minimal impact on his ability to function in a work setting, and found that the impairment was non-severe.  *Id.*

Next, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 21. In the decision, the ALJ found that Plaintiff did not meet the specific criteria of any listing under § 4.00, or any other listing, and that the medical opinions of the state agency physicians and consultative physicians supported this finding. *Id.* The ALJ indicated that, at the hearing, Plaintiff's counsel asserted that Plaintiff did not meet any listing, but "possibly equaled" one, but did not specify which listing. *Id.* However, according to the ALJ, the documentary evidence and hearing testimony did not support the assertion made by Plaintiff's counsel. *Id.* The ALJ then explained the criteria of Listing 4.04 (ischemic heart disease), and indicated that Plaintiff did not exhibit any such extreme cardiac malfunction to meet the requirements of Listing 4.04. *Id.*

After making the above findings, the ALJ determined that Plaintiff had the ability to perform light work, with the restrictions detailed above. Tr. at 22. When discussing the basis for the RFC finding, the ALJ first indicated that Plaintiff had a history of cardiomyopathy and coronary artery disease. *Id.* The ALJ stated that, at the hearing, Plaintiff indicated that he was unable to perform work of any kind due to swelling in his feet and ankles, and his poor memory. *Id.* Continuing, the ALJ noted that Plaintiff made the several claims at the hearing, namely, that he: experienced problems with concentration and had difficulty doing simple tasks such as reading since his heart problems began; suffered from fatigue since his heart surgery; had to nap regularly, particularly after doing any kind of activity, such as grocery shopping; had not experienced improvement in his symptoms over time, even after surgical intervention; had poor circulation and needed to lie down most of the day to alleviate his symptoms; and experienced shortness of breath and heart palpitations. *Id.*

The ALJ then indicated that Plaintiff stated that he suffered from fatigue, weakness, dizziness, shortness of breath, and that he needed to wear a "life vest" in a September 2012 pain

-4-

report.[3]  Tr. at 22.  Continuing, the ALJ stated that Plaintiff noted that his pain and other symptoms increased when walking any distance or lifting anything heavier than a gallon of milk.  *Id.* at 23. The ALJ found that the objective evidence did support Plaintiff's allegations that he suffered from a serious bout of cardiomyopathy and required a multiple vessel bypass, however, despite his allegations at the hearing and in his pain report, Plaintiff did well in recovery and with treatment, and he was able to function at a level consistent with the RFC finding.  *Id.*

Next, the ALJ indicated that Plaintiff alleged that he was unable to work since July 2012 when he was admitted to the hospital with shortness of breath and an initial ejection fraction of only fifteen percent.  Tr. at 23.  The ALJ stated that an electrocardiogram ("EKG") showed that Plaintiff had a normal sinus rhythm with left axis deviation and poor T wave progression.  *Id.*  According to the ALJ, a transthoracic EKG showed a dilated left ventricle with severe systolic dysfunction and ejection fraction estimate at thirty percent.  *Id.*  The ALJ noted that Plaintiff underwent a left heart catheterization, which showed significant stenosis in multiple vessels.  *Id.*  Continuing, the ALJ stated that Plaintiff underwent a four-vessel coronary artery bypass procedure and placement of a right femoral intraaortic balloon pump on July 26, 2012.  *Id.*  The ALJ indicated that immediately after the procedures, Plaintiff's ejection fraction had improved by approximately twenty to thirty percent and the balloon was functioning well.  *Id.*  The ALJ noted that following the surgery, Plaintiff suffered complications, including blood-loss anemia and right lower lobe lung collapse, due to a mucous plug.  *Id.*  Additionally, according to the ALJ, Plaintiff was give a LifeVest prior to his discharge from the hospital due to systolic dysfunction.  *Id.*

The ALJ indicated that Plaintiff saw Rekhi P. Varghese, M.D., a cardiologist, on August 23, 2012, and Dr. Varghese noted that Plaintiff was "compensated and doing well from a cardiovascular standpoint."  Tr. at 23.  Continuing, the ALJ noted that Plaintiff denied any complaints of chest pain, dyspnea, paroxysmal nocturnal dyspnea ("PND"), orthopnea, dizziness, presyncope, or syncope, and

---

[3]"The LifeVest is a personal defibrillator worn by a patient at risk for sudden cardiac arrest.  It monitors the patients heartbeat continuously, and if the patient goes into a life-threatening arrhythmia, the LifeVest delivers a shock treatment to restore the patient's heart to normal rhythm."  Cleveland Clinic: LifeVest, http://my.clevelandclinic.org/services/heart/services/arrhythmia-treatment/life-vest (last visited November 2, 2016).

that Dr. Varghese indicated that Plaintiff was to follow-up for an EKG in about four weeks. *Id.* The ALJ stated that Dr. Varghese saw Plaintiff again on October 4, 2012 for the follow-up examination, during which Dr. Varghese noted that Plaintiff was participating actively in cardiac rehabilitation therapy and denied any weight gain, chest pain, shortness of breath, orthopnea, PND, presyncope, or syncope. *Id.* According to the ALJ, Plaintiff did complain of occasional dizziness, especially when changing position. *Id.* The ALJ explained that Dr. Varghese reviewed the EKG results indicating Plaintiff's left ventricle ejection fraction was still low at twenty-five percent, and because of this factor, Dr. Varghese directed Plaintiff to continue to use the LifeVest until an implantable cardiac defibrillator could be placed for primary prevention. *Id.* Further, the ALJ noted that Plaintiff was found to be "in no particular distress" with blood pressure of 108/86, clear lungs, good digital pulses, and a well-healed surgical incision, but also that Plaintiff appeared depressed at the examination. *Id.*

Continuing, the ALJ indicated that by November 2012, Plaintiff underwent an EKG that showed his left ventricle was normal, and Plaintiff stated that he had no more instances of dizziness or shortness of breath, but noted his shortness of breath had increased with activity. Tr. at 23. The ALJ stated that Plaintiff had a cardiac defibrillator placed. *Id.* Next, the ALJ noted that Plaintiff displayed stable cardiac symptoms in January 2013, and that Plaintiff's implantable cardiovascular defibrillator was functioning normally, and he denied angina, syncope, dyspnea, PND, and palpitations. *Id.* at 24. The ALJ indicated that Plaintiff appeared with clear lungs at a consultative examination in February 2013. *Id.* Further, the ALJ stated that Plaintiff presented with a normal heart rate, rhythm, and intensity, with no murmurs, trills, or friction. *Id.* Additionally, the ALJ indicated that Plaintiff had no carotid, temporal, or ocular bruits, his peripheral pulses were full and synchronus, and, despite his normal appearance, Plaintiff complained of fatigue. *Id.* The ALJ noted that treatment notes from this period indicated that Plaintiff stated that he experienced dyspnea with moderate exertion, denied any lower extremity edema, weight gain, dizziness, or palpitations, and that Plaintiff was non-compliant with diuretic therapy and did not take his medication on a regular basis. *Id.* Further, the ALJ indicated that a cadiovascular examination of Plaintiff revealed normal S1 and S2 findings with a regular rate and rhythm, no murmurs, rubs, or gallops, and that Plaintiff's

-6-

lungs were clear to auscultation bilaterally. *Id.* Additionally, that ALJ noted that an EKG showed no abnormalities. *Id.*

Next, the ALJ indicated that, as of March 2013, Plaintiff's defibrillator function was normal and he continued to deny any angina, synocope, and dyspnea on exertion. Tr. at 24. The ALJ also noted that Plaintiff had no nocturnal dyspnea, defibrillator shock, or palpitations. *Id.* Continuing, the ALJ stated that Plaintiff reported some mild exertional dyspnea in May 2013, but did not report any palpitations, heart murmur, cough, or sleep problems. *Id.* The ALJ also noted that Plaintiff was able to ambulate without assistance, had no gross muscle weakness or edema, his sensory function was normal, his pulses were equal bilaterally, and a chest examination revealed no wheezes, rhonchi, or rales. *Id.* Additionally, the ALJ stated that Plaintiff: had a normal oxygen level after ambulation; showed no evidence of pericardial effusion; exhibited only mild mitral regurgitation without testing; and showed no significant abnormalities upon forced expiratory volume testing. *Id.*

According to the ALJ, Plaintiff's cardiac symptoms continued to improve throughout the year after his surgery, and by one year after the alleged onset date, Plaintiff was doing better and noted palpitation only after strenuous activity. Tr. at 24. The ALJ indicated that in June 2013, Plaintiff underwent an EKG that showed his left ventricle internal dimensions were normal, with only mild concentric left ventricular hypertrophy present. *Id.* Additionally, the ALJ stated that Plaintiff had only mild left ventricular hypokinesis with abnormal septal motion, consistent with the postoperative state. *Id.* The ALJ indicated that, overall, Plaintiff's left ventricular systolic function was only mildly impaired with an estimated ejection fraction of fifty percent, though Plaintiff did have some Doppler evidence for stage-two diastolic dysfunction and multiple echo densities noted within his right atrium, which the ALJ stated likely only represented defibrillator leads with reverberation artifacts. *Id.* Continuing, the ALJ stated that Plaintiff did have some mild tricuspid regurgitation, and that his estimated right ventricular pressure was less than thirty-seven mmHg and was within normal limits. *Id.*

The ALJ indicated that Plaintiff complained of fatigue in November 2013, but admitted no chest pain, palpitations, or leg swelling, and was negative for light-headedness, numbness, headaches, and edema. Tr. at 24. In addition, the ALJ noted that Plaintiff's pulses were palpable

bilaterally.  *Id.*  Continuing, the ALJ indicated that Plaintiff denied chest pain, anxiety, and major depression in December 2013, and exercise testing showed that there were no high risk clinical predictors or active cardiac issues.  *Id.* at 24-25.  The ALJ stated that as of February 2014, Plaintiff's cardiac issues remained well controlled and that a cardiac examination showed a regular rate and rhythm, and his muscular strength was intact.  *Id.* at 25.  Further, the ALJ noted that Plaintiff had no chest pain, angina, dyspnea, or palpitations.  *Id.*  The ALJ then addressed treatment notes from May 2014, referring to the treatment notes as "recent," indicating that Plaintiff's level of functioning was much higher than his allegations implied.  Specifically, the ALJ indicated that the notes showed that "[o]ther than mild dyspnea with moderate exertion that has remained unchanged for the past year, [Plaintiff] has no other complaints."  *Id.* (quoting Tr. at 851).  Continuing, the ALJ stated that treatment records from June 2014 indicated that Plaintiff was feeling well, and was without angina, syncope, or dyspnea on exertion.  *Id.*

Next, the ALJ indicated that Plaintiff had a long history of tobacco use, and the ongoing use of tobacco had impacted his cardiopulmonary function.  Tr. at 25.  The ALJ stated, "[t]hough [Plaintiff] stated recently that he had not smoked since July 2012, records from December 2013 stated that he was 'smoking again.'"  *Id.* (internal citations omitted).  According to the ALJ, Plaintiff's ongoing tobacco abuse indicated that he had not been consistent in following recommended medical treatment.  *Id.*

The ALJ then addressed the opinion evidence, starting with the opinion of Mary Helen Massullo, D.O.  Tr. at 25.  First, the ALJ indicated that Dr. Massullo completed a consultative examination of Plaintiff, and stated that Plaintiff was compromised as to walking, standing, lifting, and traveling, and noted that he "would not be able to understand or perform normal physical activity, but would be able to remain in a seated position."  *Id.*  Further, the ALJ noted that Dr. Massullo stated that Plaintiff's "hearing, speaking, and gross usage of the bilateral extremities would be possible."  *Id.*  The ALJ determined that this opinion was consistent with the objective record at the time of the consultative examination, however, the opinion did not preclude Plaintiff from performing sedentary work consistent with the RFC finding.  *Id.*  In addition, the ALJ noted that Dr.

-8-

Massullo's opinion was based on a physical examination. *Id.* The ALJ then stated that, based on the above, he afforded significant weight to the opinion of Dr. Massullo. *Id.*

Continuing, the ALJ indicated that he also considered assessments made by state agency physicians regarding Plaintiff's ability to perform basic physical work activities. Tr. at 25. The ALJ stated that, at the initial level, Lynne Torello, M.D., determined that Plaintiff could: lift or carry ten pounds occasionally and less than ten pounds frequently; perform unlimited pushing and pulling; never climb ladders, ropes, or scaffolds; and occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. *Id.* The ALJ also indicated that Dr. Torello determined that Plaintiff should avoid concentrated exposure to cold, heat, humidity, and respiratory irritants, and all exposure to hazards. *Id.* Next, the ALJ stated that at the reconsideration level, Leon Hughes, M.D., indicated that Plaintiff could: lift or carry twenty pounds occasionally and ten pounds frequently; stand or walk for two hours in and eight-hour workday and sit for six hours in an eight-hour workday; perform unlimited pushing and pulling; never climb ladders, ropes, or scaffolds; and occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. *Id.* Further, the ALJ stated that Dr. Hughes determined that Plaintiff should avoid concentrated exposure to cold, heat, humidity, and respiratory irritants, and all exposure to hazards. *Id.* The ALJ then indicated that although these opinions found that Plaintiff's impairments had less of an impact on him than the assigned RFC, he afforded these opinions great weight rather than controlling weight because the opinions were prepared by non-examining physicians, but were consistent with the objective record when considered in its entirety. *Id.*

Next, the ALJ discussed the opinion of Dr. Varghese, who completed a RFC assessment of Plaintiff.[4] Tr. at 26. The ALJ indicated that Dr. Varghese determined that Plaintiff suffered from shortness of breath and edema as a result of his ischemic cardiomyopathy. Continuing, the ALJ stated that Dr. Varghese also determined that Plaintiff: should avoid work around vibrating machinery; could perform sedentary work without exertion; would miss about three days of work per month as a result of his impairments and treatment; and could work only one hour per day and

---

[4]The ALJ jointly refers to Dr. Varghese's August 2013 and July 2014 opinions. *See* Tr. at 26, 864-868.

would occasionally need to elevate his legs during an eight-hour workday. *Id.* The ALJ stated that Dr. Varghese assigned the above limitations based on Plaintiff suffering from dyspnea upon mild exercise, PND or nocturnal cough, and decreased ejection fraction of eighty percent. *Id.* However, according to the ALJ, only a month prior to Dr. Varchese's opinion the objective medical evidence indicated that Plaintiff was feeling well, and was without angina, syncope, or dyspnea on exertion. *Id.* The ALJ also noted that "there were no objective treatment records to support these allegations and that this opinion was inconsistent with the objective record as a whole." *Id.* For these reasons, the ALJ afforded Dr. Varghese's opinion little weight. *Id.*

Following the discussion of the RFC determination, the ALJ found that Plaintiff was unable to perform any past relevant work, was a younger individual on the alleged disability onset date, had at least a high school education and was able to communicate in English, and that the transferability of jobs skills was not material to the determination of disability because the Medical-Vocational Rules supported a finding that Plaintiff was not disabled. Tr. at 26-27. Based on Plaintiff's age, education, work experience, and RFC, the ALJ determined that jobs existed in the significant numbers in the national economy that Plaintiff could perform. *Id.* at 27. For these reasons, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from July 20, 2012, through the date of the decision. *Id.* at 28.

### III.  STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.  An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

-10-

4.   If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.   If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step.  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.   STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted).  Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007).  Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled.  The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001)  However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon

-11-

the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (internal citations omitted).

**V.      LAW AND ANALYSIS**

   **A.      RFC Finding**

        Plaintiff first asserts that the ALJ's RFC finding lacks the support of substantial evidence because it did not properly account for all of his limitations.  ECF Dkt. #14 at 18.  Specifically, Plaintiff claims that the ALJ omitted limitations opined by Dr. Massullo, a consultative examiner, after her opinion was assigned significant weight and purportedly formed the basis of the RFC finding.  *Id.*  Plaintiff avers that this Court has consistently held that when a medical opinion contradicts an ALJ's RFC finding, the ALJ must explain why he did not include the limitations contained in the opinion in the RFC finding.  *Id.* (internal citations omitted).  Continuing, Plaintiff indicates that Dr. Massullo made the following statement:

> [Plaintiff] has apparent need for ambulatory device for overall stability and is safe for short distances on level surfaces, long distances on level surfaces, short distances on uneven surfaces and long distances on uneven surfaces for stability due to exertion [shortness of breath] and fatigue associated with this. [Plaintiff] appears to be a fall risk due to his fatigue and ongoing [congestive heart failure]. [Plaintiff] appears to be able to be in an upright position, on their feet for at least 0-1 hours out of an eight hour work day, either standing or walking. [sic]

ECF Dkt. #14 at 474-75.  Dr. Massullo's conclusion regarding Plaintiff's impairments stated:

> [Plaintiff] appears to be compromised to do most work related activities such as walking, standing, lifting and traveling. [Plaintiff] has had [myocardial infarction] years ago with no knowledge of [hypertension] which is poorly controlled currently with tobacco abuse, recently ceased and enlarged heart with [congestive heart failure] with fatigue and subsequent CABGx4. [Plaintiff] would not be able to undergo any normal physical activity but a seated position, hearing, speaking and gross usage of BUES appears possible. [sic]

*Id.* at 476.

        Plaintiff indicates that the ALJ discussed Dr. Massullo's opinion and assigned it significant weight, and that the ALJ stated, "[Dr. Massullo's] opinion did not preclude [Plaintiff] from performing sedentary work consistent with his current [RFC]." ECF Dkt. #14 at 19.  Continuing, Plaintiff asserts that Dr. Massullo's opinion included several limitations that were more restrictive than those imposed in the RFC finding, namely, that Plaintiff: (1) required a cane for standing and walking - a limitation not included in the RFC finding; and (2) was capable of standing and walking

-12-

0-1 hours in an eight-hour workday - whereas the RFC finding stated that Plaintiff could stand or walk for two hours in an eight-hour workday. *Id.* at 20. Plaintiff contends that the ALJ was not free to exclude these limitations without explanation. *Id.*

Defendant asserts that Plaintiff recognizes that the ALJ only gave Dr. Massullo's opinion significant weight, meaning that the ALJ did not completely accept every part of the opinion. ECF Dkt. #17 at 11. Continuing, Defendant avers that the ALJ was not obligated to accept the exact language or findings of a medical source opinion in its entirety. *Id.* at 11-12 (internal citations omitted). Defendant further asserts that Plaintiff's argument also fails because the ALJ's RFC findings were not inconsistent with Dr. Massullo's opinion regarding Plaintiff's ability to stand and walk. *Id.*

Plaintiff's arguments are without merit. The ALJ was not obligated to discuss every last facet of Dr. Massullo's opinion. *See Dykes ex rel. Brymer v. Barnhart*, 112 Fed. App'x 463, 468 (6th Cir. 2004). The ALJ cited, discussed, and relied upon a substantial amount of evidence ranging from September 2012 to May 2014 supporting the conclusion that Plaintiff did not experience significant limitations in his ability to stand or walk, including citations to numerous examinations during which Plaintiff denied experiencing symptoms resulting from his impairments and displayed largely normal capabilities in the areas of standing and walking. Tr. at 22-25. Additionally, Plaintiff used a cane upon his own accord, rather than as the result of a prescription from a physician, and Dr. Massullo's inclusion of the fact that Plaintiff had an "apparent" need for a cane is ambiguous as to whether she agreed that Plaintiff required the cane, or she is merely noted that Plaintiff seemingly had a need for the cane as demonstrated by its use. *See* Tr. at 472, 474. In light of the majority of medical evidence indicating that Plaintiff experienced mild limitations in his ability to ambulate and Plaintiff's failure to cite any objective medical evidence to the contrary, the ALJ's failure to mention Dr. Massullo's ambiguous comment about Plaintiff's use of a cane, the use of the cane being a decision made by Plaintiff himself, rather than upon the recommendation of a physician, does not demonstrate that the ALJ failed to properly account for all of Plaintiff's limitations.

-13-

Additionally, Plaintiff claims that the ALJ erred by finding that he could stand or walk for two hours in an eight-hour workday because the finding is contrary to Dr. Massullo's opinion.  ECF Dkt. #14 at 20.  Dr. Massullo opined, "[Plaintiff] appears to be able to be in an upright position, on their feet for *at least* 0-1 hours out of an eight hour [sic] work day [sic], either standing or walking." *Id.* at 474-75 (emphasis added).  The ALJ opined that Plaintiff could "stand or walk about 2 hours in [sic] 8 hour [sic] workday with normal breaks." *Id.* at 22.  The RFC finding made by the ALJ is not contrary to Dr. Massullo's opinion because she opined that Plaintiff could stand or walk for "at least 0-1" hours in an eight-hour workday, and the ALJ found that Plaintiff could stand or walk for "about 2 hours" in an eight-hour workday.  While the undersigned notes that Dr. Massullo's opinion is somewhat ambiguous as to what she means by "at least 0-1 hours," this is not ground to reverse the decision of the ALJ, as suggested by Plaintiff, because a finding of error would require reading Dr. Massullo's opinion in a manner in which "at least 0-1 hours" now becomes "no more than 0-1 hours."  The ALJ's RFC finding is not inconsistent with Dr. Massullo's opinion, and reading Dr. Massullo's opinion to limit Plaintiff to no more than one hour of standing or walking in an eight-hour workday ignores the actual language contained in the opinion.  For these reasons, Plaintiff's argument that the ALJ's RFC finding lacks the support of substantial evidence because it did not properly account for all of Plaintiff's limitations is without merit.

### B.    Treating Physician Rule

Plaintiff also argues that the ALJ did not comply with the treating physician rule when evaluating the opinion of Dr. Varghese.  An ALJ must give controlling weight to the opinion of a treating source if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so.  Social Security Rule ("SSR") 96-2p.  The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*  This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she

-14-

may therefore "be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he or she rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *8 (6th Cir. 2010). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *7 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he or she considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

Dr. Varghese authored an opinion in August 2013 determining that Plaintiff could perform sedentary work without exertion, but would likely be absent from work two to three times per month as the result of his impairments. Tr. at 864. In a second opinion issued in July 2014, Dr. Varghese opined that Plaintiff could work one hour per day and would need to occasionally elevate his feet during the workday. *Id.* at 867. Plaintiff argues that remand is required because the ALJ did not

-15-

follow the treating physician rule when affording little weight to Dr. Varghese's opinion.  ECF Dkt. #14 at 21.  Plaintiff indicates that a treating physician's opinion must be afforded controlling weight if it is: (1) well supported by clinical and laboratory diagnostic techniques; and (2) not inconsistent with other substantial evidence in the record.  *Id.* (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013)).

First, Plaintiff argues that the ALJ's statement that he "also noted that there were no objective treatment records to support these allegations and that [these] opinion[s] [were] inconsistent with the objective record as a whole" was not a good reason for discounting the opinion of the ALJ because an ALJ must discuss or identify the allegedly conflicting evidence.  ECF Dkt. #16 at 23.  Next, Plaintiff asserts that the only other reasons offered by the ALJ for discounting Dr. Varghese's opinions, Plaintiff's examination on June 3, 2014, mischaracterizes his serious medical condition.  *Id.* at 23-24.  Defendant contends that substantial evidence supports the ALJ's decision to discount Dr. Varghese's opinions.  ECF Dkt. #17 at 15.  Specifically, Defendant asserts that the ALJ found the opinions "inconsistent with the objective record as a whole" and contrasted Dr. Varghese's opinions with the opinions from the state agency reviewing physicians.  *Id.* at 16-19.

Plaintiff's arguments are without merit.  First, Plaintiff's assertion that the ALJ did not cite any conflicting evidence when making his conclusion that Dr. Varghese's opinions were inconsistent with the record as a whole is wrong.  Plaintiff appears to read the ALJ's conclusion regarding Dr. Varghese's opinions in a vacuum, ignoring the ALJ's discussion of Plaintiff's medical history from September 2012 to May 2014 and the discussion of the other opinions offered by medical sources. *See* Tr. at 22-26.  Contrary to Plaintiff's claim that the ALJ did not cite any evidence supporting his conclusion that Dr. Varghese's opinions were inconsistent with the record, the ALJ's review of the record offers numerous pieces of evidence indicating that Plaintiff's limitations were not as great as the limitations prescribed in Dr. Varghese's opinions.  *Id.*  For example, the ALJ noted that Dr. Varghese indicated that his opinions were based on Plaintiff's dyspnea on mild exercise, PND or nocturnal cough, and decreased left ventricular ejection fraction of eighty percent, however, objective medical evidence from only one month prior to the June 2014 opinion indicated that Plaintiff was feeling well, and was without angina, syncope, or dyspnea on exertion .  Tr. at 26.

-16-

Plaintiff's assertion that the ALJ's reliance on a single instance where Plaintiff's condition had improved mischaracterizes his condition is without merit.  The ALJ cited to objective medical evidence directly contradicting the impairments upon which Dr. Varghese based her opinion.  *Id.* Plaintiff claims that this was a single instance, however, it is clear from the ALJ's decision and the record that Plaintiff consistently presented without severe symptoms, repeatedly reported feeling well with little or no pain, and responded well to treatment.

Additionally, Plaintiff indicates that he underwent surgery in July 2012 and complications arose in the postoperative process, and subsequently presented with persistent symptoms that were supported by abnormal EKGs.  ECF Dkt. #14 at 23-24.  Plaintiff's provision of evidence he believes supports his position is misplaced, as the Court will not disturb the decision of the ALJ as long as it is supported by substantial evidence.  *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  Here, the ALJ provided a detailed discussion of the medical evidence and then determined that Dr. Varghese's opinions were inconsistent with the objective record as a whole.  A review of the portions of the record cited by the ALJ support this conclusion, and thus the ALJ's decision regarding Dr. Varghese's opinion was supported by substantial evidence.  Plaintiff claims that he continuously presented to Dr. Varghese and other cardiologists throughout the relevant time period with persistent symptoms that were supported by abnormal EKGs and physical examinations, but provides no specific evidence of these symptoms, instead citing generally to the entire portion of his brief discussing the medical evidence and a portion of his letter to the Appeals Council requesting review.[5]  In any event, and as discussed above, Plaintiff has failed to demonstrate that the ALJ's decision was not supported by substantial evidence.  Accordingly, Plaintiff's argument that

---

[5]In his reply brief, Plaintiff again claims that the ALJ relied upon a single examination performed in June 2014 to discount Dr. Varghese's opinion.  Once more, Plaintiff appears to be reading the ALJ's statements about Dr. Varghese's opinions in a vacuum.  The sentence following the ALJ's statement about the June 2014 examination reads, "[t]he [ALJ] also noted that there were no objective treatment records to support these allegations and that [these] opinion[s] [were] inconsistent with the objective record as a whole."  Tr. at 26.  It is clear from the ALJ's decision that he relied not only on the June 2014 examination when discounting Dr. Varghese's opinion, but also the total lack of objective medical evidence supporting the limitations contained in her opinion.  The ALJ provided a detailed analysis of the medical evidence in the portion of his decision immediately proceeding the discussion of the opinion evidence and made it clear that the entire record was considered when weighing the opinions of Dr. Varghese.

-17-

the ALJ violated the treating physician rule fails because Dr. Varghese's opinions were not supported by clinical and laboratory diagnostic techniques, and were inconsistent with other substantial evidence in the record.  *See Gayheart*, 710 F.3d at 375-76.

**VI.**     **CONCLUSION**

       For the foregoing reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

Date: November 7, 2016                    *  /s/George J. Limbert*
                                          GEORGE J. LIMBERT
                                          UNITED STATES MAGISTRATE JUDGE